## Case No. 17,599.

WHITTAKER et al. v. The J. A. TRAVIS.

[7 Chi. Leg. News, 275.]

District Court, E. D. Wisconsin. 1875.

MARITIME LIENS—SUPPLIES AND REPAIRS IN HOME PORT.

The court is constrained to hold, in view of the new twelfth rule, and of the decisions made since its adoption, that the libelants had a right to proceed in rem against the schooner Travis, for the repairs and materials made and furnished by them at the home port upon the credit of the vessel.

[Cited in The J. E. Rumbell, 148 U. S. 17, 13 Sup. Ct. 502.]

[This was a libel by Thomas Whittaker and others against the schooner J. A. Travis, her boats, etc., to recover for supplies furnished the schooner.]

DYER, District Judge. The libel alleges that between the 10th December, 1873, and the 5th May, 1874, the libelants performed labor and furnished materials in repairing the schooner J. A. Travis, at the port of Muskegon, in the state of Michigan, at the request of the master and owner, and upon the sole credit of the vessel, and that there is due and owing to libelants, on account of such labor and materials, $3,190.

James Bonnell intervenes for his interest as mortgagee, and in his answer, sets up a mortgage on the vessel, executed April 17th, 1872, by the then owners, to secure the payment of $2,524.93 payable in installments, and upon which mortgage, he alleges, there is due $887.47 with interest at ten per cent. from April 17th, 1872. The vessel has been sold, and the fund realized, except as the same has been applied in payment of seamen's wages, lies in the registry of this court, for distribution as may be ordered. The repairs were made upon the vessel at her home port; and the allegations of the libel are that they were made upon the credit of the vessel. It is claimed by libelants that they had a maritime lien upon the vessel for the amount claimed to be due them on account of the repairs, and that such lien is paramount to the intervenor's mortgage. It is claimed by the mortgagee, Bonnell, that the libelants had no such lien, and that from the fund in court, his mortgage must be first paid.

It will be seen, therefore, that the case involves the question whether, as the repairs were made in the home port, the libelants have a maritime lien upon the vessel and can maintain a proceeding in rem. The decision of this question involves the difficult task of considering numerous decisions upon this and kindred questions affecting admiralty jurisdiction, and especially of determining the scope and construction of the 12th rule in admiralty as originally established, then repealed, and finally amended by the supreme court of the United States.

By the civil law, a lien is given upon a vessel for repairs and supplies whether the vessel was at her home or in a foreign port at the time such repairs and supplies were made and furnished. A different doctrine was, however, adopted by the English courts, which held that no lien in admiralty exists by reason of repairs and supplies furnished in the home port of the vessel and such is the present doctrine of those courts, as shown by the cases cited upon the argument. The constitution extends the judicial power of the United States "to all classes of admiralty and maritime jurisdiction." Const. U. S. art. 3, § 2. In 1789, congress passed an act in relation to process to be used in the courts which had been established, and therein directed, that the forms and modes of proceeding in courts of maritime jurisdiction, should be according to the course of the civil law. [1 Stat. 93.] Difficulties arose, as pointed out by Chief Justice Taney in the case of The St. Lawrence, 1 Black. [66 U. S.] 522, in following the provisions of this act, and by a subsequent act of May 8, 1792 [1 Stat. 275], it was provided that "the forms of writs, executions and other process, except their style and the forms and modes of proceeding in suits, in those of common law shall be the same as are now used in the said courts respectively, in pursuance of the act entitled 'An act to regulate processes in the courts of

the United States;' in those of equity, and in those of admiralty and maritime jurisdiction, according to the principles, rules and usages which belong to courts of equity, and to courts of admiralty, respectively, as contradistinguished from courts of common law, except so far as may have been provided for by the act to establish the judicial courts of the United States; subject, however, to such alterations and additions as the said courts respectively shall, in their discretion, deem expedient, or to such regulations as the supreme court of the United States shall think proper, from time to time, by rule to prescribe to any circuit or district court concerning the same." It was under this act, and an act passed August 23, 1842 [5 Stat. 516], enlarging the power conferred by the act of 1792, that the supreme court derived its authority to make rules regulating procedure in admiralty.

Subsequent to the passage of the act of 1792, but prior to adoption of any rule or regulation of procedure, the case of The General Smith, 4 Wheat. [17 U. S.] 438, was decided, in which case it was held, as Chief Justice Taney states the decision in the case of The St. Lawrence, 1 Black. [66 U. S.] 529, "that where, upon the principles of the Maritime Code, the supplies are presumed to be furnished on the credit of the vessel, or where a lien is given by the local law, the party is entitled to proceed in rem in the admiralty court to enforce it; but where the supplies are presumed by the Maritime Code to be furnished on the personal credit of the owner or master, and the local law gives him no lien, although the contract is maritime, yet he must seek his remedy against the person and not against the vessel. In either case, the contract is equally within the jurisdiction of a court of admiralty. And it is obvious from this decision, that the court considered the process in rem given for repairs or supplies to a domestic vessel by the courts of admiralty, in those countries where the principles of the civil law have been adopted, as forming no part of the general Maritime Code, but as local laws, and therefore furnishing no precedent for similar cases where the local law is otherwise." This case was decided in 1819. It was followed in 1833 by the case of Peyroux v. Howard, 7 Pet. [32 U. S.] 324, and in 1839 by the case of New Orleans v. Phoebus, 11 Pet. [36 U. S.] 275.

In 1844 the supreme court promulgated the following rule, known as rule 12: "In all suits by material-men for supplies or repairs or other necessaries for a foreign ship or for a ship in a foreign port, the libelant may proceed against the ship and freight in rem, or against the master or owner alone, in personam; and the like proceeding in rem shall apply to cases of domestic ships, where, by the local law, a lien is given to material-men for supplies, repairs or other necessaries." By this rule, the proceeding in rem

was limited to cases of foreign ships, or ships in a foreign port, except where, in cases of domestic ships, the local law gave a lien. And it will be seen that the rule simply reaffirmed the principle or adopted the course of practice laid down in the case of The General Smith, 4 Wheat. [17 U. S.] 438. The adoption of the rule in 1844 was followed by decisions of the supreme court in New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. [47 U. S.] 344, decided in 1848, and in People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393, decided in 1857, both of which cases reassert the doctrine laid down in the case of the General Smith.

The proceeding in rem against domestic vessels in cases where the local law conferred a lien, was, however, found inapplicable, and to be attended with embarrassments growing out of the diverse statutory limitations in different states. and on the 1st May, 1859, the supreme court repealed rule 12, and adopted the following: "In all suits by material-men for supplies or repairs, or other necessaries, for a foreign ship or for a ship in a foreign port, the libelant may proceed against the ship and freight in rem, or against the master or owner alone in personam, and the like proceeding, in personam, but not in rem. shall apply to cases of domestic ships for supplies, repairs or other necessaries." By this rule the proceeding in rem was restricted to cases of foreign ships, or ships in a foreign port.

It is true, as stated by Judge Woodruff in The Edith [Case No. 4,283], that by the course of decision down to the adoption of the new rule in 1859, "the supreme court affirmed that the contract for repairs and supplies to a vessel is a maritime contract, and within the jurisdiction of the district courts, as courts of admiralty; that the contract for supplies and repairs to a foreign vessel is attended by a maritime lien in favor of the material man. or repairer, as an incident to the contract, which would be enforced in the admiralty; that the contract for supplies and repairs to a domestic vessel in her home port is attended by no such incident; that no maritime lien is implied therein or created thereby; and that, although the admiralty had jurisdiction of the contract, and would sustain suits thereon in personam, there is no lien by maritime law upon the vessel itself, to be enforced as such." This course of decision, it may be added, was followed by the supreme court in other and later cases. The Belfast. 7 Wall. [74 U. S.] 625. decided in 1868; The Kalorama, 10 Wall. [77 U. S.] 208, decided in 1869. In 1866 the court held, in the case of The Moses Taylor. 4 Wall. [71 U. S.] 411, that a statute of the state of California authorizing actions in rem against vessels for causes of action cognizable in the admiralty, invested the courts of California with admiralty jurisdiction; that by act of congress such jurisdiction was exclusively vested in the federal courts, and that the state court of California had no jurisdiction of a proceeding in rem against a vessel, under such statute, for a breach of contract to transport a passenger from New York to San Francisco. The same principle was followed in Hine v. Trevor, 4 Wall. [71 U. S.] 555, which was a case involving a similar statute in Iowa.

Following all these decisions, and in May, 1872, the supreme court. by amendment. again changed rule 12 so that it should read as follows: "In all suits by material-men, for supplies or repairs, or other necessaries, the libelants may proceed against the ship and freight in rem, or against the master or owner alone in personam." Apparently, this rule, as now established, destroys all distinction between foreign and domestic ships, so far as process is concerned, in suits for supplies, repairs, or other necessaries.

It is argued that there are decisions to the effect that under the present rule all ships. whether foreign or domestic, and whether in a foreign or the home port, are liable for repairs and supplies furnished on the credit of the ship, and that a proceeding in rem may in all cases be maintained for the recovery of a claim for such repairs and supplies.

In the case of The St. Lawrence, 1 Black. [66 U. S.] 526, Chief Justice Taney very clearly shows that these rules do not at all involve a question as to the extent of the admiralty jurisdiction granted by the constitution. He says: "There is a wide difference between the power of the court upon a question of jurisdiction, and its authority over its mode of proceeding and process, and the alteration in the rule applies altogether to the character of the process to be used in certain cases, and has no relation to the question of jurisdiction." In other words, the jurisdiction of the courts cannot be enlarged or diminished by a mere rule of practice, but process and mode of procedure may be regulated by rule, and it is the exercise of this latter power that is involved in the establishment of the rule in question. · Following the principle of this decision, I think it inaccurate to say. that the change in rule 12, proprio vigore, gives to a maritime contract the qualities of a maritime lien, or that it establishes a maritime lien where before there was none. In my judgment, the true position in sustaining a proceeding in rem upon a claim for repairs or supplies made and furnished in the home port is, that by the maritime law, where such repairs or supplies are made and furnished upon the credit of the vessel, there exists a lien which under the present rule may be enforced by a proceeding in rem against the ship and freight. And in determining whether a claim for supplies or repairs in the home port is a maritime lien. the rule as now established is important to be considered as indicating a conclusion of the court that in all suits for supplies, repairs or other necessaries, whether furnished in the home or a foreign port. the libelant may proceed against the ship in rem;

and as evincing a contemplated departure from the past course of decision on the question of maritime liens for repairs and supplies.

A comparison of the three forms of rule 12, shows that the change last made is radical. Originally, the proceeding in rem was distinctly restricted to cases of foreign vessels or vessels in a foreign port, except where the local law gave a lien, in which cases, the proceeding would lie against a domestic vessel. By the change made in 1859, the proceeding in rem was in all cases confined to foreign ships or ships in a foreign port, and was in no case to apply to domestic vessels. By the change of 1872, the proceeding in rem is permitted in all suits for repairs or supplies, and no distinction is named between foreign and domestic vessels. The decisions of the supreme court holding that no maritime lien arises for repairs made and supplies furnished in the home port of the vessel, were all made prior to the adoption of the present rule. There are decisions of several eminent district judges to the effect, that by the rule of 1872, the supreme court intended to declare that a maritime lien arises upon a contract for repairs or supplies whether the vessel be foreign or domestic. Nevertheless, I have hesitated upon the question, because that court has not yet, by formal decision, enunciated that principle, and reversed its previous decisions which have been so long the law of the land. I have not, however, been able, in view of the language of the new rule, the history of the changes made in the rule as first established, the utterances of the courts since this question has arisen, and upon principle, to escape from the conclusion that, in the adoption of the rule of 1872, the supreme court foreshadowed an adjudication that material-men have a lien by the general maritime law without distinction between foreign and domestic vessels and foreign or home ports.

Soon after the adoption of the new rule it was held by Judge Miller, of this district, that a libel can be maintained for repairs and supplies furnished to a domestic vessel at the home port, and that the alteration of rule 12 was intended to place contracts for repairs and supplies for all vessels on an equality as to proceedings in admiralty. The Selt [Case No. 12,649]. This was followed by a decision by Judge Blatchford in The Circassian [Id. 2,-726], in which he held that "the rule of 1872 provides, and was intended to provide, that in every case of a contract for supplies, etc., to a vessel, domestic or foreign, being a maritime contract, process in rem against the vessel, or in personam against her master or owner, may optionally be resorted to where a suit is required to enforce the contract." In the case of The Augusta [Id. 647], Judge Deady decided that "the effect of the rule in its present form is to do away with the distinction which prevailed after the decision in the case of The General Smith, supra, between foreign and domestic ships, and ships in home or other ports, and to make all ships, as such, liable for repairs, supplies, or other necessaries, furnished at the express or implied request of the owner or master." The decision of Judge Treat in Taylor v. The Commonwealth [Id. 13.788], is to the same effect, though there are some conclusions in the opinion in which I am unable to concur. Justice Miller, of the supreme court, sitting as circuit judge, while reversing the decision of Judge Treat in that case on the point that the libelant had waived his lien, expresses the opinion that a maritime lien exists for supplies and repairs furnished on the credit of a vessel at the home port. His utterance is significant, as indicating in some degree the purpose of the court of which he is a member, in amending rule 12. Taylor v. Com. [Id. 13,787]. In The Lottawanna [20 Wall. (87 U. S.) 201], Justice Clifford speaks of the little or no difficulty arising in the practice both previous and subsequent to the adoption of the rule of 1844, and until its repeal in 1859, as most or all of the states enacted laws giving a lien for the protection of material-men in cases of repairs and supplies furnished to a ship in her home port. Speaking of the repeal of the old twelfth rule and the adoption of the new rule, which did not authorize a proceeding in rem, except where there was a claim founded on a maritime lien against a foreign ship, or against a ship in a foreign port, he says: "Attempts were made by the states to obviate the embarrassment which grew out of the repeal of that rule and the adoption of the new rule, withdrawing the use of the process in rem from the district courts to enforce the payment of claims for repairs and supplies furnished to domestic ships; but this court decided in several cases, that the state legislatures could not create a maritime lien, nor could they confer jurisdiction upon a state court to enforce such a lien by a suit or proceeding in rem, as practised in the admiralty courts. Much embarrassment has existed ever since the old twelfth admiralty rule was repealed, as the new rule makes no provision to enforce the payment of contracts for repairs and supplies furnished to domestic ships, except by a libel in personam. Repeated judicial attempts have been made to overcome the difficulty, none of which have proved satisfactory, because they failed to provide a remedy in the admiralty by a proceeding in rem. Inconveniences of the kind have been felt for a long time, until the bench and bar have come to doubt whether the decision that a maritime lien does not arise in a contract for repairs and supplies furnished to a domestic ship is correct, as it is clear that the contract is a maritime contract, just as plainly as the contract to furnish such repairs and supplies to a foreign ship or to a domestic ship in the port of a state other than that to which the ship belongs. Such a remedy is not given even in the latter case unless the repairs and supplies were furnished on the credit of the ship, and it is difficult to see why the same remedy may not be given in the former case if the repairs and supplies were obtained by the

master on the same terms. These and many other considerations have had the effect to create serious doubts as to the correctness of the decision made more than fifty years ago, that a maritime lien does not arise in such a case."

Judge Longyear in the case of The Champion [Case No. 2,583], says that in the United States "the maritime lien was at first adopted as it was administered in England, together with all its inconsistencies and incongruities as applied to the condition of things here. The incongruity of limiting the jurisdiction to tide water has already been abandoned, and has ceased to mar the harmony of the system; and, judging from the recent amendment of admiralty rule 12, by the supreme court, and certain foreshadowings by recent enunciations from the bench of that court, and to which may be added a recent decision by the district court for the Eastern district of Missouri, it is evident that this other is about to meet the same fate."

Such are the views and indications of the courts which have thus far given any expression upon the question. It seems that by the repeal of the rule of 1844, and the adoption of the new rule of 1859, all authority for the use of the process in rem against domestic vessels, when, by the local law a lien was given, was taken away. Attempts of the states to obviate the difficulty were followed by decisions that the state legislatures could not confer upon state courts jurisdiction to enforce a maritime lien by a proceeding in rem. This took away all power in admiralty to enforce the payment of claims for repairs and supplies furnished to domestic ships, except by a libel in personam. Then followed the new rule of 1872. Its language is broad and comprehensive. It authorizes a proceeding in rem in all suits by material-men for supplies or repairs. I cannot resist the conclusion that it was intended to clear up all difficulties, and that by its adoption the court must be understood as intending to obliterate the former prevailing distinction between foreign and domestic ships, and ships in foreign or home ports. Upon principle, why should that distinction exist? In the case of a foreign ship, or a ship in a foreign port, there can be no lien for repairs or supplies, unless they are furnished on the credit of the ship. Why should not the same remedy be given in the case of a domestic ship, when the repairs and supplies are furnished solely on its credit? The contract in both cases is a maritime contract, and there seems no solid ground for a distinction, where the contract is made upon the faith and credit of the vessel.

Judge Benedict, in his work on Admiralty (§ 272), says that it is not easy to see how any difference can exist in principle between foreign and domestic ships. "If one is a ship or vessel, so is the other; and the same law and the same reason which gives a lien in the one case gives it in the other."

In the case of The Kate Tremaine [Case No. 7,622], Judge Benedict says that the doctrine declared in the Case of The General Smith "has given rise to numerous attempts to create state admiralty proceedings, framed for no other purpose than to avoid its effect, and which have proved to be snares. * * * It declares an exceptional doctrine which is at war with all the analogies of the maritime law, and which has been continually assailed as without support in authority, and without foundation in reason; and which, I think, must in fairness be said to have failed to secure a resting-place in the maritime law of America." In the same opinion, Judge Benedict further says that many of the peculiar notions of maritime jurisdiction derived from England "have at last been expelled from the jurisprudence of America, and the opinion is widely expressed that their offspring should follow them. The court will then be relieved from the necessity of holding that the residence of the ship-owner, which is considered immaterial as affecting the master's contracts of affreightment, or his contracts with the tug, or the pilot, or the crew, becomes all at once very material when his contract is for the food of the master, pilot, and crew."

In recognition of the necessities of the vast shipping and commericial interests of the country, the exercise of admiralty jurisdiction within the limitations of the constitution and the laws of congress, has been gradually enlarged and former restrictions abandoned. I think the new twelfth rule marks a further step in that direction, and I am constrained to hold, in view of that rule and of the decisions made since its adoption, which I have cited, that the libelants had a right to proceed in rem against the schooner Travis for the repairs and materials made and furnished by them at the home port, upon the credit of the vessel.

In the case of Edwards v. Elliott [21 Wall. (88 U. S.) 532], decided by the supreme court at the October term, 1874, the opinion in which case is found in a note to the case of The Tuttle, 13 Am. Rep. 273, it was held that builders and material-men have no lien for labor done and materials furnished in the construction of a vessel. The decision is based wholly upon the ground that a contract to build a vessel is not a maritime contract. The case, therefore, has no application, as it is settled that a contract to repair is a maritime contract.

Funds furnished in a foreign port for repairs to a ship have priority as a lien over existing mortgages. The Emily B. Souder [17 Wall. (84 U. S.) 666]. If there is now a maritime lien for repairs in the home port, the above principle applies as in case of repairs in a foreign port, and the lien of the libelant is not subordinate to the claim of the mortgagee. Libelants will be first paid the amount of their claim from the fund in court.

WHITTAKER (KARR v.). See Case No. 7,613.

WHITTAKER (UNITED STATES v.). See Case No. 16,687.